*504 OPINION OF THE COURT
Lewis Bart Stone, J.
In this CPLR article 78 proceeding, petitioner GH Ville Inc. (GH Ville) seeks to set aside the order (the determination) issued by the Environmental Control Board Motions and Appeals Unit (ECB) dated March 26, 2002, finding GH Ville in violation of title 24, chapter 2, § 220 of the Administrative Code of the City of New York on the grounds that (i) the determination was arbitrary, capricious, unreasonable, unsupported by substantial evidence, contrary to law, and not based upon a reasonable basis, and (ii) that such Code provision is unconstitutional.
Background
This case concerns the issuance of a notice of violation on November 4, 2000 (the notice) to GH Ville in response to a complaint of noise emanating from GH Ville’s restaurant, “The Slipper Room” (the restaurant), located at 167 Orchard Street in Manhattan. The notice alleged that GH Ville violated section 24-220 (b) of the Code.
The notice, which had been issued by Inspector Ojo (the inspector) stated: “§ 220(b): used or caused to be used a sound reproduction device for commercial purpose so that the sound therefrom could be heard upon a public street, park or place.” It went on to describe the violation: “The owner operated or allowed to be operated a sound reproduction device, such as 6 speakers, 2 Technics turntables, 1 Numark mix plus DJ for commercial purposes for attracting attention wherein music or sound played could be heard to [sic] public street.”
On December 17, 2000, a hearing on the notice was held before an Administrative Law Judge (ALJ). The inspector, who had inspected the restaurant on November 4, 2000, testified that he could hear music emanating from the restaurant while standing outside on the sidewalk. He stated that the door of the restaurant was- closed when he heard the music from outside. There was no testimony of any open doors, windows or other apertures from which he could hear music from outside the restaurant. The inspector testified that about 12:45 a.m., he entered the restaurant, saw people singing “Happy Birthday,” saw others dancing, and saw the above-mentioned equipment. He also stated that there was a “sandwich board” outside the restaurant indicating what food was being served.
James Halbacher, the owner of the restaurant, testified that he had owned the restaurant for approximately nine months which serves food and alcohol. On the evening of November 4, 2000, the restaurant was open to the public and a birthday *505 party was taking place. Mr. Halbacher stated that there was sound equipment inside the restaurant and that music could be heard outside of the restaurant but could not be heard from the street. He stated that the purpose of the music was for the enjoyment of the patrons and not to attract customers.
The ALJ ruled that GH Ville was in violation of Code § 24-220 (b), stating that the inspector “heard music on the street coming from [GH Ville’s] (6) speakers and (2) turntables,” sustained the notice, and imposed a fine of $700 against GH Ville.
GH Ville made a timely appeal to the ECB which issued the determination affirming the findings of the ALJ. GH Ville filed the instant proceeding challenging such determination.
Legal Conclusions
The first ground upon which GH Ville seeks to vacate the determination is: “[A] determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.” (CPLR 7803 [3].)
In considering this petition, this court is limited to an assessment of whether a rational basis exists for the exercise of discretion or the action complained of is “arbitrary and capricious.” (Matter of Pell v Board of Educ., 34 NY2d 222 [1974].) The arbitrary and capricious test chiefly relates to whether a particular action should have been taken or is justified and whether the administrative action is without foundation in fact (1 NY Jur, Administrative Law § 184, at 609). Arbitrary action is defined as being without sound basis in reason and is generally taken without regard to the facts. (Colton v Berman, 21 NY2d 322, 329 [1967].) There also must be such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact. (Matter of Palace Camera & Elecs. v City of N.Y. Dept. of Consumer Affairs, 183 Misc 2d 64 [Sup Ct, Kings County 1999].)
Administrative Code § 24-220 (b) reads as follows:
“§ 24-220. Sound reproduction devices. * * *
“(b) No person shall operate or use or cause to be operated or used any sound reproduction device for commercial or business advertising purposes or for the purpose of attracting attention to any performance, show, or sale or display of merchandise, in connection with any commercial or business enter *506 prise including those engaged in the sale of radios, television sets, phonographs, tape recorders, phonograph records or tapes, in front or outside of any building, place or premises, or in or through any aperture of such building, place of premises, abutting on or adjacent to a public street, park or place, or in or upon any vehicle operated, standing or being in or on any public street, park or place, where the sound therefrom may be heard upon any public street, park or place, or from any stand, platform or other structure, or from any airplane or other device used for flying, flying over the city, or on a boat or on the waters within the jurisdiction of the city, or anywhere on the public streets, parks or places. Nothing in this section is intended to prohibit incidental sounds emanating from a sporting or entertainment or a public event for which a permit under section 10-108 of the code has been issued.”
This Code contains five “prongs” as the basis for a violation: first, the sound must emanate from a reproduction device; second, it must be for commercial or business advertising purposes; third, the sound must be in connection with a commercial or business enterprise; fourth, the sound reproduction device must be in front or outside a building or in or through any aperture of such building; and fifth, the sound must be heard on any public street.
There is no dispute regarding prongs one, three or five, that a sound device was used in connection with a commercial establishment and the sound could be heard on the street.
However, the record shows no basis for a finding that both of the other two requirements, prong two, that the sound must be for a commercial or business advertising purpose, and prong four, that the sound device must be in front or outside a building or in or through any aperture of such building, have been met.
In aflirming the ALJ, the determination reiterated prior ECB decisions (cited by ECB and attached as exhibits)[1] in order to establish prong two, that music played in a commercial establishment supports an inference, or “raises a presumption,” that the music has a commercial or business advertising purpose. Thus, respondent relies on this presumption to establish this prong.
*507 In only one case cited by ECB did a responding party offer a defense or “rebuttal” to this presumption. In Bridge v Oasis Inc. (Appeal No. 23391), the establishment there asserted a “defense” that the music in the premises was for the enjoyment of the patrons. In that case, the ECB responded to this evidence with another presumption: the fact that music made by a sound reproduction device played within a commercial premises was permitted to be heard on the street established a “business or advertising” purpose, and therefore constituted a violation of section 24-220 (b). The ECB in Bridge v Oasis therefore relied on another presumption to establish this second prong and affirmed the violation found below.
Here, GH Ville also asserted a “defense” in order to “rebut” the first presumption. At the hearing (as well as before the ECB), GH Ville asserted that music was played not to attract customers but for the enjoyment of the patrons. In other words, GH Ville rebutted the presumption that the music was intended to be for a commercial or business advertising purpose.
The ECB responded (as it had in Bridge v Oasis) with another presumption: the fact that music could be heard on the street is sufficient to conclude that the music was for a “commercial or business advertising purpose” and therefore constituted a violation.
The determination was therefore not based on relevant and rational proof but on a presumption rebutted by evidence, and answered not with facts but another presumption. In a case not cited by ECB and not attached to its papers, New York City v USA Elecs. (Appeal No. 30275), the ECB Board came to a different conclusion: the establishment in that case rebutted the presumption by stating that the music was incidental and not for the purpose of attracting customers. In that case, the ECB did not counter with another presumption but held that since there was no “intention” for the music to attract customers, there was no violation and the finding by the ALJ was reversed.[2]
Presumptions cannot stand when faced with factual evidence to the contrary. The determination here was therefore arbitrary and capricious as it was without sound basis in reason and without regard to facts.
The fourth prong of the Code, which is required for a finding of a violation, also has no basis of support in the record. ECB *508 precis of the statute, that “[t]he statute allows that the speakers may be located in the premises and clearly requires only that the sound be heard upon any public street,” is not what the statute says. The statute requires that “no person shall operate * * * any sound device for commercial or business advertising purposes * * * in front or outside of any building * * * or in or through any aperture of such building * * * where the sound can be heard upon any public street.” (Emphasis added.) Any ordinary reading of the statute shows that its purpose was to ban outside loudspeakers and to prevent the circumvention of such ban by also banning inside loudspeakers playing through a hole in the wall or window or door of the premises. A sanction for the violation of this provision is punitive; due process requires that the statute be construed in such a way as to give reasonable notice to those whose conduct it would sanction. Thus, even if the tortured construction placed upon the statute by ECB could be parsed and teased from the language, such a counterintuitive reading would raise severe due process questions if such statute was to be so construed.
In addition, cases cited by ECB do not support their position that it is sufficient only that the sound be heard on the street, notwithstanding that there is no apertures through which the sound emanates. (See Bridge v Oasis Inc., Appeal No. 23391 [doors “wide open” to establishment]; Relrn Assoc., Appeal No. 31969 [music heard when doors opened and closed to let patrons in]; Barnard Hall, Appeal No. 31785 [sound traveled through windows of catering hall]; Hogs & Heifers, Appeal No. 21486 [front door had been kept open because of a broken air conditioner]; Falcons Peruvian Rest., Appeal No. 32261 [sound traveled through the windows].) USA Elees, (supra) held that the evidence established that the speakers were located inside the store, and based the reversal of the ALJ on this additional fact as well as the reasons cited above. In only one cited case, Rancho Mexican Café (Appeal No. 27211), did the ECB determine that although all the speakers were inside, the violation could be sustained.
The record here indicates that the speakers were located inside the restaurant. While the inspector testified that he could hear music while standing outside the establishment, there was no determination by either the ALJ or the ECB that there was a device “in front of or outside the building” or that it was heard “in or through any aperture.” On this basis, the determination was not supported by adequate proof to support *509 an ultimate fact and was, on the record, arbitrary and capricious.
Having found the determination below to be in error, this court need not address GH Ville’s second claim which makes constitutional challenge to the statute, or to make inquiries into whether the presumptions asserted to exist are proper presumptions themselves based on law or fact.
The relief requested by GH Ville is granted to the extent that the determination of the ECB is vacated and the ruling of the ALJ set aside. Furthermore, the ECB shall return to GH Ville the amount of $700 which was the penalty set by the ALJ and paid by GH Ville to ECB.

. Cases cited and attached by respondent were affirmances of an ALJ regarding the same Code provision.

. In New York City v USA Elecs., the ECB also found that since the speakers were inside, the establishment did not violate the Code.